William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
488 Madison Ave., Suite 1100
New York, New York 10022
(Phone) (212) 286-1425; (Fax)(646) 688-3078
Co-counsel
Jeffrey M. Gottlieb, Esq. (JG-7905)
Gottlieb & Associates
150 East 18th Street, Suite PHR
New York, New York 10003
Tel: (212) 228-9795
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
BLEDAR GANI, Individually and on Behalf :     ECF
of All Other Persons Similarly Situated, :
:     10 Civ. 4433 (CM)
                 Plaintiff, :
    -against- :
:
GUARDIAN SERVICE INDUSTRIES, INC., :
SAMUEL HERZFELD, :
 and JOHN DOES #1-10, :
:
               Defendants. :
-----------------------------------------------------------------------X


# PLAINTIFF'S MOTION ON CONSENT FOR FINAL APPROVAL OF SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND REPRESENTATIVE INCENTIVE AWARD

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION…………..………………………………………………………..1

II.  ATTORNEYS' FEES AND EXPENSES………………………………………….1

III. ARGUMENT……………………………………………………………………2

    A.   It is Appropriate to Certify the Settlement Class for Purposes
        of the Settlement………………………………..………………………2

    B.   The Settlement Meets the Standards for Judicial Approval of
        Class Action Settlements and Should Be Approved…………………………4

    C.   Likelihood of Success at Trial…………………………………………..6

    D.   The Range of Possible Recovery and the Recovery Achieved ………………6

    E.   The Complexity, Expense, and Duration of the Litigation…………………...7

    F.   The Substance and Amount of Opposition to the Settlement………………...8

    G.   The Stage of Proceedings at Which Settlement Was Achieved………………9

    H.   The Notice Program Approved by the Court was Effectuated………………..10

IV.  CLASS COUNSEL'S FEE REQUEST SHOULD BE APPROVED…………………....10

    A.   Negotiated Attorney's Fee Agreements Are Favored In
        Class Action Settlements………………………………………..……………16

    B.   The Quality of Representation……………………………………………...18

    C.   The Agreed-Upon Fee Is Reasonable Under a Lodestar
        Cross-Check Analysis……………………………………………………19

    D.   Class Counsel's Expenses Were Reasonably and Necessarily Incurred…........21

V.   THE INCENTIVE AWARDS FOR THE NAMED PLAINTIFFS ARE
    REASONABLE…………………………………………………………………..21

VI.  CONCLUSION………………….………………………………………….22

# TABLE OF AUTHORITIES

**CASES**                                                                                    **Page(s)**

In re Alloy Inc. Sec. Lit.
    2004 WL 2750089 (S.D.N.Y. Dec.2, 2004)………………………………………15

Amchen Prods. v. Windsor
    521 U.S.591,501,620 (1997)……………………………………………………2

Behrens v. Wometco Enterprises, Inc.
    118 F.R.D. 538 (S.D. Fla. 1988), aff'd 899 F. 2d 21 (11th Cir. 1990)…………… 4

Berry v. School Dist. of City of Benton Harbor
    184 F.R.D. 93, 98 (W.D. Mich. 1998)……………………………………………….6

M. Berenson Co. v. Faneuil Hall Marketplace, Inc.
    671 F. Supp. 819, 829 (D. Mass. 1987)…………………………………………….19

Blanchard v. Bergeron
    489 U.S.87, 103 L. Ed. 2d 67, 109 S. Ct. 939 (1989)………………………………14

Blum v. Stenson
    465 U.S. 886, 895 n.11,900 (1984)…………………………………………………13

Carroll v. United Compucred Collections, Inc.
    399 F. 3d 620, 625-626 (6th Cir. 2005)……………………………………………2

Chambless v. Masters, Mates, & Pilots Pension Plan
    885 F. 2d 1053, 1058,1059 (2d Cir. 1989)…………………………………………13

City of Riverside v. Rivera,
    477 U.S. 561 (1986)…………………………………………………………………14

In re Continental Illinois Securities Litigation,
    962 F. 2d 566,568-570 (7th Cir.1992)…………………………………………..20

In re Copley Pharmaceutical, Inc.,
    1 F. Supp. 2d 1407, 1413-14 (D. Wy. 1998)………………………………………21

Cotton v. Hinton,
    559 F. 2d 1326, 1331 (5th Cir. 1977)……………………………………………4,5

Cowan v. Prudential,
    728 F. 2d 522 (2d Cir.1991)…………………………………………………………15

Detroit v. Grinnell Corp.,
    495 F.2d 448, 470 (2d Cir. 1974)…………………………………………………17

Dolgow v. Anderson,
    472, 494 (E.D.N.Y. 1968)……………………………………………………………18

Dornberger v. Metropolitan Life Ins. Co.,
    203 F.R.D. 118. 125 (S.D.N.Y. 2001)…………………………………………….22

Dunlap-McCuller v. Riese Org.,
    980 F. 2d 153 (2d Cir. 1992)…………………………………………………….15

Fears v. Wilhelmina Model Agency, Inc.,
    2005 U.S. Dist. LEXIS 7961, at *9 (S.D.N.Y. May 5, 2005)…………………..21

Four Seasons Sec. Laws Litig.,
    58 F.R.D. 19, 36, 37 (W.D. Okla. 1972)…………………………………………7

Frank v. Eastman Kodak Co.,
    228 F.R.D. 174, 187 (W.D.N.Y. 2005)…………………………………………21

In re General Motors Corp. Liab. Litig. (GM Pick Up Trucks),
    55 F. 3d 768, 812 813,813-822 (3d Cir. 1995)……………...…………………12-16

Gierlinger v. Gleason,
160 F. 3d 858, 882 (2d Cir. 1998)……………………………………………..15

Goldberger  v. Integrated Resources, Inc.,
    209 F. 3d 43,47,50,51,53 (2d Cir., 2000)…………………………………..13-16

Grant v. Martinez,
    973 F. 2d 96, 101 (2d Cir. 1997)…………………………………………….....14

Hall v. Cole,
    412 U.S. 1,5 n.7 (1973)………………………………………………………17

Hanlon v. Chrysler Corp.,
    150 F. 3d 1011 (9th Cir. 1998)…………………………………………………2

Hensley v. Eckerhart,
    461 U.S. 424, 437 (1983)……………………………………………………19

Hicks v. Morgan Stanley & Co.,
    01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *29)
    (S.D.N.Y. Oct. 24, 2005)……………………………………………………21

Johnson v. Georgia Highway Express, Inc.,
    488 F. 2d 714, 720 (5th Cir. 1974)………………………………………..19

Kaplan v. Rand,

192 F.3d 60, 70 (2nd Cir. 1999)………………………………………………………17

In re King Res. Co Sec. Litig.,
  420 F. Supp. 610, 625 (D. Colo. 1976)…………………………………………………6

Kopet v. Esquire Realty Co.,
  523 F. 2d 1005, 1008 (2d Cir. 1975)…………………………………………………..17

In re Lloyd's Am. Trust Fund Litig.
  2002 WL 3166577 (S.D.N.Y. Nov. 26, 2002)…………………………………16-18

In re Lupron ® Mktg. and Sales Practices Litig.
  No. 01-CV-10861-RGS, 2005 U.S. Dist. LEXIS 17456, at *14
  (D.Mass. Aug. 17 2005)………………………………………………………………20

Malchman v. Davis,
  761 F. 2d 893, 905 n.5 (2d Cir. 1985), cert. denied, 475 U.S. 1143 (1986)………….19

Maley v. Del Global Tech. Corp..
  186 F. Supp. 2d 358,369,373 (S.D.N.Y. 2002)………………………………………20

Manners v. American General Life Ins. Co.
  1999 U.S. Dist. LEXIS 22880 at *55 (M.D. Tenn., Aug. 11, 1999)…………………6

McBean v. City of New York,
  233 F.R.D. 377, 386, 2006 U.S. Dist. LEXIS 5003 (S.D.N .Y.2006)………………20

McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, et al.
  450 F.3d 91 (2d Cir. 2006)……………………………………………………………13

Miele v. New York State Teamsters Conference Pension & Ret. Fund,
  831 F. 2d 407, 409 (2d Cir. 1987)……………………………………………………13

In re NASDAQ Market-Makers Antitrust Litig.
  187 F.R.D. 465, 484,485,489 (S.D.N.Y. 1998)………………………………………..20

Orchano v. Advanced Recovery, Inc.,
  107 F. 3d 94, 98-99 (2d Cir. 1997)……………………………………………………15

In re Orthopedic Bone Screw Products Liab. Litig.,
  176 F.R.D. 158, 185 (E.D. Pa. 1997)…………………………………………………..10

In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions,
  148 F. 3d 283,318,319 (3rd Cir. 1998)……………………………………….............2

In re Prudential Sec. Inc. Ltd., P'ships Litig.,
  985 F. Supp. 410, 417  (S.D.N.Y. 1997)………………………………………………17

Quartino v. Tiffany & Co.,
    166 F. 3d 422,426 (2d Cir. 1999)………………………………………………..14-15

Ressler v. Jacobson,
    822 F. Supp. 1551, 1553 (M.D. Fla. 1992…………………………………………….7

In re RJR Nabisco, Inc. Sec. Litig.
    No. 88 Civ. 7905 (MBM), 1992 WL 210138,
    (S.D.N.Y. Aug. 24 1992) 1992 U.S. Dist. LEXIS 12702……………..…………….16

Ruiz v. McKaskle
    724 F. 2d 1149 (5th Cir. 1984)………………………………………………….…..5

Savoie v. Merchants Bank,
    166 F. 3d 456, 460 (2d Cir. 1999)…………………………………………………….20

Spann v. AOL Time Warner,
    02 Civ. 8238 (DLC) (S.D.N.Y., 2005)………………………………………………22

Steiner v. Williams,
    99 Civ. 10186 (JSM),  2001 WL 604035 (S.D.N.Y. 2001)………………………….15

Susquehanna Corp. v. Korholz
    84 F.R.D. 316, 322 (N.D. Ill. 1979) …………………………………………………..6

TBK Partners, Ltd. v. Western Union Corp.,
    675 F. 2d 456, 463-64 (2d Cir. 1982)………………………………………………..7

Teachers' Ret. Sys. v. A.C.L.N., Ltd.,
    Master File No. 01-CV-11814 (MP), 2004 U.S. Dist. LEXIS 8608, at *11
    (S.D.N.Y. May 14, 2004)…………………………………………………………..16

In re Twinlab Corp. Sec. Litig.,
    187 F. Supp. 2d 80, 85 (E.D.N.Y. 2002)…………………………………………..16

In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.,
    724 F. Supp. 160 (S.D.N.Y. 1989)………………………………………………...15

In re United States Oil and Gas Litig.,
    967 F. 2d 489, 493 (11th Cir. 1992)……………………………………………….4

In re Warner Comms.Sec. Litig.,
    618 F. Supp. 735, 749 (S.D.N.Y. 1985)……………………………………………20

Weiss v. Mercedes-Benz of N. Am. Inc.,
    899 F. Supp. 1297, 1304 (D.N.J. 1995), aff'd 66 F.3d 314 (3d Cir. 1995)…………21

Williams v First Nat'l Bank,
     216 U.S. 582, 585 (1910)……………………………………………………………….4

In re Worldcom, Inc. ERISA Lit.,
     339  F. Supp. 2d 561 (S.D.N.Y. 2005)…………………………………………..15

Young v. Katz
     447 F. 2d 432, 433 (5th Cir. 1971)…………………………………………..5

## STATUTES, RULES AND REGULATIONS

Class Action Fairness Act
28 U.S.C. § 1712 (b) (2)…………………………………………………………………20

Fair Labor Standards Act (FLSA)………………………………………………….passim

Federal Rules of Civil Procedure
Rule 23.. …………………………………………………………………………passim

29 U.S.C.  §216 (b)………………………………………………………………..14

N.Y. Lab. Law §198…………………………………………………………………14

**PLAINTIFF'S MOTION ON CONSENT FOR FINAL APPROVAL OF SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND REPRESENTATIVE INCENTIVE AWARD**

Under Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff Bledar Gani ("Plaintiff") applies to this Court for Final Approval of Settlement, Certification of Settlement Class, An Award of Attorneys' Fees and Expenses and a Representative Incentive Award in this wage and class action litigation as more specifically set forth in Plaintiff's Application for Preliminary Approval ("Plaintiff's Appl.").

## I.      INTRODUCTION

Plaintiff submits this memorandum in support of this motion for formal approval of the settlement reached in this litigation. By order dated April 17, 2012, the Hon. Katherine B. Forrest, United States District Court, Southern District of New York, granted preliminary approval to the settlement and conditionally certified this matter as a class action ("Preliminary Order"). The settlement is in the sum of $387,212 (equal to potential payments to class members equal to $200,000, payments to the collective action class equal to $65,000 totaling $265,000.00, plus $110,000 of legal fees, plus $7,212.00 of legal costs, plus a $5,000 Name Plaintiff Incentive Award).  (See Settlement Agr. ¶¶ 8A, 8B, 8C)

## II.     ATTORNEY'S FEES AND EXPENSES

William C. Rand and Jeffrey M. Gottlieb, acting in both capacities as Class Counsel and Class Administrator, seek the approval from this Court for an award of fees and costs, all inclusive, in the total sum of $117,212.00, which sum the Defendants agreed not to oppose (Settlement Agr. ¶ 6B). Plaintiff's counsels seek an award of One-Hundred and Ten Thousand Dollars ($110,000.00) for attorneys' fees and an award of Seven Thousand, Two Hundred and Twelve Dollars ($7,212.00) in costs and expenses already incurred in this Litigation.  These

1

amounts will be paid to Plaintiff's Counsels if the Court approves the fairness of the settlement

agreement. Plaintiff's Counsels will not make any further application to the Court for any

additional fees, costs and/or expenses. Defendants have agreed to pay these fees and expenses

and have agreed not to oppose the fairness of the fee. See Paragraph 6B of the Settlement

Agreement.

## III.   ARGUMENT

### A.   It Is Appropriate To Certify the Settlement Class for Purposes of the Settlement

Certification of the Settlement Class is appropriate to effectuate a settlement of Plaintiff's

and Settlement Class Members' claims against Defendants. Indeed, the benefits of the

Settlement can be realized only through the certification of a Settlement Class, and the Supreme

Court of the United States has emphatically confirmed the viability of such settlement classes.

See e.g., Amchem Prods. v. Windsor, 521 U.S. 591 (1997). So, too, have the federal appeals

courts. See e.g.,  Carroll v. United Compucred Collections, Inc., 399 F.3d 620, 625-626 (6th Cir.

2005); In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions, 148 F.3d 283 (3d Cir.

1998); Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998).

As Plaintiffs have detailed in the Plaintiffs' motion for preliminary approval of the

Settlement, the Settlement Class readily meets the criteria of Rules 23(a) and 23(b)(3) of the

Federal Rules of Civil Procedure. The Class is sufficiently numerous, the commonality

requirement also is easily met, as well as typicality. The claims of the representative Plaintiff and

each of the Class Members is predicated on the alleged failure of Defendants to pay them

minimum and/or overtime wages. In order to prevail, therefore, the named Plaintiffs and each

member of the Class will be required to make the same factual presentation and legal argument

with respect to the common questions of liability, regardless of the individual circumstances

which may affect their ability to prove individual causation and amount of damages on an

individualized basis.

The adequacy requirement also is satisfied easily. The representative Plaintiff has zealously pursued his claims against the Defendants for their alleged wrongful conduct. Given the identical aspects of claims among the Plaintiff and the Class Members set forth above, there is no potential for conflicting interests in this action. The Plaintiff possesses the same interests and has suffered the same injury as other Class Members. Plaintiff and Class Members are seeking to vindicate identical interests. At the same time, Class Counsel has diligently pursued the interests of Plaintiff and the Class. Class Counsel are a well regarded members of the legal community, have broad experience in class action lawsuits and, in particular, have broad experience in wage and hour litigation, similar in size, scope and complexity to the present case.

The predominance requirement of Rule 23(b)(3) is met as well. For example, all of Plaintiff's and Class Members' claims for compensatory relief are founded upon a common legal theory of Defendants' failure to comply with the NY Labor Law and/or the FLSA. Here, where Plaintiffs' and all of Class Members' claims are premised upon their employment by Defendants and alleged labor law violations, and where each has the opportunity to obtain the same type of relief under the Settlement or to exercise the right to pursue litigation outside the Settlement, there can be little doubt that predominance is sufficiently demonstrated and that certification is appropriate.

Finally, it is clear that resolution of the Plaintiff's and Settlement Class Members' Claims by class wide settlement is superior to individual adjudication of the Settlement Class Members' claims for compensatory relief. In particular, the Settlement provides Plaintiff and Settlement Class Members with an ability to obtain predictable, certain and defined compensatory relief promptly and contains well defined administrative procedures to assure due process in the application of the Settlement to each individual claimant including, the right to "opt-out." By

contrast, individualized litigation carries with it great uncertainty, risk and costs, and provides no guarantee that the injured Plaintiff and Settlement Class Members will obtain necessary and timely compensatory relief at the conclusion of the litigation process. Settlement also will relieve judicial burdens that would be caused by repeated adjudication of the same issues in many individualized trials against Defendants.

For these reasons, and given that the Court already has conditionally certified the Settlement Class, the Court should finally certify the Settlement Class.

**B.    The Settlement Meets the Standards for Judicial Approval of Class Action Settlements and Should Be Approved.**

The Settlement before this Court, reached through arms-length negotiations, resolves this dispute and provides Settlement Class Members with relief that equals or surpasses what could be achieved through trial. The Settlement should therefore be readily approved by the Court, especially considering the well-settled policy favoring the settlement of cases. Williams v. First Nat'l Bank, 216 U.S. 582, 585 (1910) ("[c]ompromises of disputed claims are favored by the courts.") This policy applies with particular force to class-action lawsuits, the complexity and expenses of which impose special burdens borne by the judicial system as well as the litigants. In re United States Oil and Gas Litig., 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); see also, Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."). Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice…" Behrens v. Wometco Enterprises, Inc., 118 F.R.D. 538 (S.D. Fla. 1988) aff'd, 899 F.2d 21 (11th Cir. 1990).

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any class-

action settlement. "In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find the settlement is fair, adequate and reasonable and not the product of collusion between the parties." Cotton, 559 F.2d at 1330. In reaching this determination, the "inquiry should focus upon the terms of the settlement," together with "an analysis of the facts and the law relevant to the proposed compromise." Id. Specifically, the settlement terms should be compared "with the likely rewards the class would have received following a successful trial of the case," subject to qualifications. Id.

"First, the courts, including those in this Circuit, have continuously stressed that it should not be forgotten that compromise is the essence of settlement." Id. As a result, in evaluating the terms of the compromise in relation to the likely benefits of a successful trial, "the trial judge ought not try the case in the settlement hearings," nor should the court "make a proponent of a proposed settlement justify each term of the settlement against a hypothetical or speculative measure of what concessions might have been gained…." Id. To the contrary, "the court must be mindful that inherent in compromise is a yielding of absolutes and an abandonment of highest hopes." Ruiz v. McKaskle, 724 F.2d 1149 (5th Cir. 1984); see also, Young v. Katz, 447 F.2d 432, 433 (5th Cir. 1971) (explaining that a mini-trial on the underlying merits for purposes of approving a settlement "would emasculate the very purpose for which settlements are made").

Second, courts have consistently stressed that in evaluating a settlement in light of the risk of continued litigation, the district court "is entitled to rely upon the judgment of experienced counsel for the parties." Cotton, 559 F.2d at 1330; See also Behrens, 118 F.R.D. at 539 ("The Court can rely upon the judgment of experienced counsel and, absent fraud, should be hesitant to substitute its own judgment for that of counsel"). "Courts have consistently refused to substitute their business judgment for that of counsel, absent evidence of fraud or overreaching." In re King Res. Co. Sec. Litig., 420 F. Supp. 610, 625 (D.Colo. 1976). Third, the courts have

stressed that "litigants should be encouraged to determine their respective rights between themselves," and that "[t]here is an overriding public interest in favor of settlement." <u>Cotton,</u> 559 F.2d at 1331.

Finally, in considering the merits of the Settlement, the Court should take into account practical considerations such as the complexity of the case and the expense and likely duration of the litigation. <u>Susquehanna Corp. v. Korholz,</u> 84 F.R.D. 316, 322 (N.D. Ill.1979). One of those practical considerations is the vagaries of litigation and the benefits of an immediate recovery as compared "to the mere possibility of relief in the future, after protracted and expensive litigation." <u>In re King Resources,</u> 420 F. Supp. at 625. In this respect, "it has been held proper to take the bird in the hand instead of a prospective flock in the bush." <u>Id.</u>

### C. **Likelihood of Success at Trial**

Class Counsel has built a case with a good likelihood of success at trial. However, as with any litigation, especially class action litigation, were this case to proceed to trial there is the risk and uncertainty that Plaintiffs and the Class might not prevail on their claims and/or that their claims would not survive an appeal. Therefore, consideration of this factor supports the approval of this Settlement. Furthermore, it would take a significant amount of time to reach the trial, and appeals would inevitably follow, causing additional delay.

### D. **The Range of Possible Recovery and the Recovery Achieved**

"A court must balance the amount offered in settlement against the strength of the class action suit." <u>Whitford v. First Nationwide Bank,</u> 147 F.R.D.135,143 (W.D.Ky. 1992). Indeed, "[O]ne of the most important factors in assessing the fairness of a settlement agreement is the strength of the plaintiff's case on the merits balanced against the relief offered in the settlement." <u>Manners v. American General Life Ins. Co.,</u> 1999 U.S. Dist. LEXIS 22880 AT * 55 (M.D. Tenn., Aug. 11, 1999) (Quoting <u>Berry v. School Dist. of City of Benton Harbor,</u> 184 F.R.D.

93,98 (W.D. Mich. 1998). In making this determination, the Court should make only a "limited inquiry into whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement." Id. (quoting Ressler v. Jacobson, 822 F. Supp. 1551,1553 (M.D. Fla. 1992).

There is no fixed point above or below which a settlement is or is not fair. Indeed, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is inadequate; there is reason why a satisfactory settlement could amount to a hundredth or even a thousandth part of a single percent of the potential recovery." Id. at *57 (quoting TBK Partners, Ltd. V. Western Union Corp., 675 F. 2d 456, 463-64 (2d Cir.1982).

Here, as in any litigation, Plaintiffs and the Class have no guarantee of success were they to pursue their claims to trial. By contrast, however, the Settlement provides for a settlement fund for the class of employees who worked only in bank branches in the amount of $200,000 and settlement fund for the FLSA collective action class of persons who worked in banks branches and banks in the sum of $65,000 and pays legal fees and expenses in the amount of $117,212. Given that the benefits available to Settlement Class Members through the Settlement Fund provides them with an adequate remedy for the alleged labor law violations, the Settlement is eminently reasonable, especially when viewed in light of settlements approved by other courts where class members recovered only a percentage of their damages. See, e.g. Lazy Oil Co. v. Witco Corp., 95 Fed. Supp. 2d 290, 319 (W.D. Pa. 1997) (court approved settlement amounting to 5.35 percent of damages); In re Four Seasons Sec. Laws Litig. , 58 F.R.D. 19,36,37 (W.D. Okla. 1972) ($8 million settlement approved, although claims exceeded $100 million); Cagan v. Anchor Sav. Bank FSB, 1990 U.S. Dist. LEXIS 11450 at *5, (E.D.N.Y., May 17, 1990) (approving $2.3 million class settlement over objections that "best possible recovery would be

approximately $121 million"); <u>Behrens</u>, 118 F.R.D. at 542. ("The mere fact that the proposed

settlement of $.20 a share is a small fraction of the desired recovery of $3.50 a share is not

indicative of an inadequate compromise."), <u>aff'd</u>, 899 F. 2d 21 (11th Cir. 1990).

Accordingly, this factor weighs in favor of approval of the Settlement.

### E.  The Complexity, Expense, and Duration of the Litigation

The complexity, expense, and likely duration of the litigation is a major factor to be

considered in evaluating the reasonableness of a settlement.  "By measuring the costs of

continuing on the adversarial path, a court can gauge the benefit of settling the claim amicably."

<u>In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.</u>, 55 F. 3d 768, 812 (3d Cir. 1993).  It is

undeniable that were this litigation to continue, Defendants would actively and aggressively

litigate this action, conceding nothing, and asserting their various affirmative defenses.  Thus, the

costs of proving the case against the Defendants would be substantial, and absent final approval

of the Settlement, these costs would quickly escalate.

Accordingly, the complexity and expense of this litigation, and the expected duration of

advancing the case to trial and through appeal in the absence of settlement weigh heavily in favor

of final approval of the Settlement. <u>See</u> <u>e.g.</u>, <u>In re Prudential.</u> ("The court found that litigation

would require expensive and time consuming discovery, would necessitate the use of several

expert witnesses, and would not be completed for years.  Consequently, the court concluded this

factor weighed in favor of settlement.  We agree."). The proposed Settlement grants Class

Members timely relief without their having to endure the risk, complexity, duration and expense

inherent in continuing this action.

Accordingly, this factor is easily satisfied.

### F.  The Substance and Amount of Opposition to the  Settlement

This factor "attempts to gauge whether the members of the class support the settlement."

See e.g., In re Prudential 148 F. 3d at 318.  Importantly, Settlement Class Members' due process rights were fully protected, as their right to opt out and object of the Settlement was made a conspicuous part of the Settlement Agreement and Notice.  However, only two Settlement Class Members opted out of the Settlement, suggesting that Settlement Class Members view the Settlement Agreement as eminently fair, reasonable and adequate.  In addition, there have been no objections.  When determining the measure of the class' reaction to a settlement, the Court must look to the number and "vociferousness of the objectors." In re GM Trucks, 55 F. 3rd at 812. See, In re Orthopedic Bone Screw Products Liab. Litig., 176 F. R. D. 158, 185 (E.D. Pa. 1997). ("What is meaningful in this regard is that the relatively low objection rate militates strongly in favor of approval of the settlement.").

Accordingly, this factor is readily satisfied.


## G. The Stage of Proceedings at Which Settlement Was Achieved

This factor requires the court to analyze the stage of the proceedings to determine "the degree of case development that …counsel have accomplished prior to the settlement." GM Trucks, 55 F. 3d at 813. "In assessing this factor, the relevant inquiry is whether the parties have conducted sufficient discovery to assess the strengths and weaknesses of their claims and defenses."  (citations omitted).  Essentially, the Court must ensure that the Settlement Agreements are not the product of a quick and uninformed decision making process. Id.

This factor is unequivocally satisfied given Class Counsel's activities prior to entering into the Settlement Agreement.  During the period leading up to the signing of the Settlement Agreement, Plaintiffs' Counsel, among other things, communicated with the Plaintiff about the nature of the litigation, performed discovery (including the review of thousands of employment records and hand written time sheets and deposition of Defendant's Vice President of Human

Resources, Brian Meagher, and there were numerous settlement conferences between counsel for the parties and finally a two day mediation between the parties that resulted in the settlement.

Indeed, Class Counsels' efforts justify a finding that the parties had more than an "adequate appreciation of the merits of the case before negotiating." In re Prudential 148 F. 3d at 319, citing GM Trucks, 55 F.3d at 813. Thus, the concern noted in Amchem – concerning the vulnerability of a settlement claim – where the parties had not been put to the test of a vigorous adversarial process in shaping their position at the bargaining table, Amchen Prods., 521 U.S. at 601, 620 is not at issue here. In this case, the adversarial process was stretched to its maximum throughout the litigation and negotiation period.

Because the Settlement was reached after painstaking work and analysis, this factor is met.

**H. The Notice Program Approved by the Court was Effectuated**

Class Counsel met all of his obligations with regard to Notice as set forth in this Court's Order of Preliminary Approval and the Settlement Agreement. Under the program approved by the Court and carried out by the parties, the Notice given was the best means of Notice that was practicable under the circumstances.

Pursuant to the Preliminary Order, Plaintiff's attorneys mailed the notice of settlement to class members on May 11, 2012. See Rand Declaration at ¶ 27.


**IV. CLASS COUNSEL'S FEE REQUEST SHOULD BE APPROVED**

Class Counsel requests that the Court award attorneys' fees and expenses set forth by the parties in the Settlement Agreement. As enumerated above, subject to Court approval, Defendants do not object to Plaintiffs' application for fees and costs to William C. Rand, Esq. and Jeffrey M. Gottlieb, Esq. together in their capacity as Class Counsel in the sum of $117,212.

The issue of how to compensate attorneys who have been successful in obtaining a common fund for the benefit of injured class members has been fought out for a long time and in many courts. The issue seems to have been put to rest after the Supreme Court's pronouncement in <u>Blum v. Stenson</u>, 465 U.S. 886,900 n.16 (1984) which declared that "under the 'common fund doctrine…a reasonable fee is based on a percentage of the fund bestowed on the class." This was followed in the seminal case on this issue in <u>In re General Motors Corp. Liab. Litig.</u>, 55 F. 3d 768, 821-22 (3d Cir., 1995) and subsequently followed in this circuit in the often cited case of <u>Goldberger v. Integrated Resources, Inc.</u> 209 F. 3d 43,50 (2d Cir., 2000).

In wage-and-hour class actions, courts employ either a "percentage of the fund" or lodestar approach to determining appropriate fees, but "[t]he trend in this Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases like this one." *Matheson v. T-Bone Rest., LLC*, 2011 WL 6268216, at *4 (S.D.N.Y. Dec. 13, 2011) (citing *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)). Moreover, courts in this Circuit have "routinely granted" requests for one-third of the fund. *See Johnson v. Brennan*, No. 2011 WL 4357376, at *19 (S.D.N.Y. Sept. 16, 2011) (collecting cases).

Additionally, <u>Goldberger</u> states that fees in such cases must be "reasonable" and "based on scrutiny of the unique circumstances of each case." <u>Goldberger</u> 209 F. 3d at 47,53. <u>Goldberger</u> also establishes six factors a reviewing court should consider in evaluating what constitutes a reasonable fee: "'1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation…; (3) the risk of the litigation; (4) the quality of the representation [measured by result]; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" <u>Id</u>. at 50 (citation omitted). Under the lodestar method, in order to calculate the reasonable hours expended, the prevailing party's fee application must be supported by contemporaneous time records, affidavits, and other materials. <u>See</u> <u>Chambless v. Masters, Mates,</u>

& Pilots Pension Plan, 885 F. 2d 1053, 1058 (2d Cir. 1989). Furthermore, a reasonable hourly

rate is a rate "in line with … prevailing [rates] in the community for similar services by lawyers

of reasonable comparable skill, expertise and reputation." Blum v. Stenson, 465 U.S. 886, 895

n.11 (1984); Chambless, 885 F. 2d at 1058-59. A district court can also use its knowledge of the

relevant market when determining the reasonable hourly rate. See Miele v. New York State

Teamsters Conference Pension & Ret. Fund, 831 F. 2d 407, 409 (2d Cir. 1987).

The Second Circuit also stated that district courts should not reduce the award of

attorney's fees simply because an attorney is a solo practitioner. McDonald v. Pension Plan of

the NYSA-ILA Pension Trust Fund, 450 F.3d 91 at 98 n. 6 (2d Cir. 2006). In determining the

relevant "market" a court may look to rates charged by those in a similar professional situation,

including looking to the rates charged by large or medium-sized law firms. The rationale behind

this practice is that a client represented by a medium-sized firm typically pays less than a large-

sized firm with higher overhead costs. Overhead costs should not determine which attorneys

should be awarded a higher or lower fee. Some highly skilled attorneys decide not to affiliate

themselves with a firm for various reasons and choose to be solo practitioners. Moreover, the

inquiry into the reasonable hourly rate should focus on the "prevailing [rates] in the community

for similar services by lawyers of reasonably comparable skill, expertise, and reputation." Blum,

465 U.S. at 895 n.11; Chambless, 885 F. 2d at 1058-59, McDonald.

Under the Fair Labor Standards Act ("FLSA") and New York State Labor Law, a

prevailing plaintiff is entitled to receive an award of reasonable attorneys' fees and costs from

defendants. See 29 U.S.C. §216 (b), N.Y. Lab. Law §198. Here, Plaintiffs are prevailing

plaintiffs and should be awarded reasonable attorneys' fees.

The case at bar is a fee shifting employment law case and, as such, any rule of

proportionality that would tie an attorney fee award to the amount of damages recovered has

been rejected by the Second Circuit. See Grant v. Martinez, 973 F. 2d 96,101 (2d Cir. 1997), Orchano v. Advanced Recovery, Inc. 107 F. 3d 94, 98-99 (2d Cir. 1997). In Quartino v. Tiffany & Co., 166 F. 3d 422, (2d Cir. 1999), the Second Circuit stated that "Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation. See City of Riverside v. Rivera, 477 U.S. at 575 (plurality opinion). ("Congress did not intend for fees in civil rights cases… to depend on obtaining substantial monetary relief.") Were we to adopt the "billing judgment" approach that the district court advocates, we would contravene that clear legislative intent by relinking the effectiveness of a civil rights plaintiff's legal representation solely to the dollar value of her claim. As a near-unanimous Supreme Court reiterated in Blanchard v. Bergeron, 489 U.S.87, 103 L. Ed. 2d 67, 109 S. Ct. 939 (1989), " a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms," id. at 96 (quoting Rivera, 477 U.S. at 574), and we are unwilling to hold that the plaintiff's attorney should calculate the value of her client's rights in just those "monetary terms." 166 F. 3d at 426.

Proportionality has been rejected as a legitimate factor for the court's consideration in assessing an appropriate fee award. Cowan v. Prudential, 728 F. 2d 522 (2d Cir.1991), Dunlap-McCuller v. Riese Org., 980 F. 2d 153 (2d Cir. 1992), Orchano v. Advanced Recovery, Inc., 107 F. 3d 94 (2d Cir. 1997), Quartino v Tiffany & Co., 166 F. 3d 422 (2d Cir. 1999).

In determining the reasonable hourly rate, this Court must look to the current market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Gierlinger v. Gleason, 160 F. 3d 858, 882 (2d Cir. 1998). Because this case was filed in the Southern District of New York, the Court should look to the community of Manhattan labor and employment law class action litigation attorneys for comparable market

rates.

This method of compensating attorneys has also been followed in this district. <u>Spann v. AOL Time Warner</u>, 02 Civ. 8238 (DLC) (2005 S.D.N.Y.); <u>In re Worldcom, Inc. ERISA Lit.</u>, 339 F. Supp. 2d 561 (S.D.N.Y. 2004); <u>In re Alloy Inc. Sec. Lit.</u> 03 Civ. 1597 (S.D.N.Y, 2004); <u>Strougo v. Bassini</u>, 258 F. Supp. 2d 358, 370 (S.D.N.Y. 2002); <u>Steiner v. Williams</u>, 99 Civ. 10186 (JSM), 2001 WL 604035 (S.D.N.Y. 2001); <u>In re Am. Bank Note Holographics, Inc. Sec. Litig.</u>, 127 F. Supp. 2d 418, 431 (S.D.N.Y. 2001); <u>In re NASDAQ Market-Makers Antitrust Litig.</u>, 187 F.R.D. 465, 484 (S.D.N.Y. 1998).

The strong judicial support for the percentage method is the widespread recognition that it does away with "the needless complications and dubious merits of the lodestar approach." <u>Strougo,</u> 258 F. Supp. 2d at 361. <u>See</u> <u>also,</u> <u>In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.</u>, 724 F. Supp 160 (S.D.N.Y. 1989). In contrast, "[t]he percentage method directly aligns the interest of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation, which clearly benefits both litigants and the judicial system." <u>In re Lloyd's Am. Trust Fund Litig.</u>, No. 96 Civ. 1262, 2002 WL 31663577, at *25 (S.D.N.Y. Nov. 26, 2002); <u>see</u> <u>also,</u> <u>In re Twinlab, Corp. Sec. Litig</u> 187 F. Supp 2d 80, 85 (E.D.N.Y. 2002) ("Courts favor the percentage of the fund method because lodestar 'created an unanticipated disincentive to early settlements,' tempted lawyers to run their hours, and 'compel[ed] district courts to engage in a gimlet-eyed review of line-item fee audit.'") (citations omitted). It also permits the judge to focus on the quality of the lawyers' efforts rather than on how many hours they billed. <u>NASDAQ</u>, 187 F.R.D. at 485. "In addition, the percentage method is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients." <u>Strougo,</u> 258 F. Supp. 2d at 362; <u>see</u> <u>also,</u> <u>In re RJR Nabisco, Inc. Sec. Litig.</u>, No. 88 Civ. 7905

(MBM), 1992 WL 210138, at *7 (S.D.N.Y. Aug. 24, 1992) ("[w]hat should govern such awards is not the essentially whimsical view of a judge, or even a panel of judges, as to how much is enough in a particular case, but what the market pays in similar cases"). No matter which method is chosen, the fees awarded in common fund cases must be "reasonable" and "based on scrutiny of the unique circumstances of each case." Goldberger, 209 F.3D at 47, 53.

"Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." Teachers' Ret. Sys. v. A.C.L.N., Ltd., Master File No. 01-CV-11814(MP), 2004 U.S. Dist. LEXIS 8608, at *11 (S.D.N.Y. May 14, 2004). The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

Detroit v. Grinnell Corp., 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted); Am. Bank Note Holographics, 127 F. Supp. 2d at 432-433 (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award"); In re Prudential Sec. Inc. Ltd. P'ships Litig., 985 F. Supp. 410, 417 (S.D.N.Y. 1997) (Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award.").

The reasonableness of the requested fee is also supported by an evaluation of the risks undertaken by the class representatives in prosecuting this class action. Here, Class Counsel vigorously negotiated a very substantial settlement for the class, and undertook this action on a wholly contingent-fee basis, investing a substantial amount of time and money to prosecute this action without a guarantee of compensation or even recovery of out-of-pocket expenses. Unlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses

on a regular basis, Class Counsel has not been compensated for any time or expenses since this case began. Moreover, Class Counsel would not have received any compensation or even reimbursement of expenses had this case not been successful. Finally, the class representatives did not simply cede to Defendants' first settlement offer. To the contrary, Class Counsel vigorously negotiated a very substantial settlement for the class.

As the Supreme Court has recognized, the rationale of the common-fund doctrines "must logically extend, not only to litigation that confers a monetary benefit on others, but also to litigation "'which corrects or prevents an abuse which would be prejudicial to the rights and interests'" of those others. Hall v. Cole, 412 U.S. 1, 5 n.7 (1973) (citation omitted); see also, Kaplan v. Rand, 192 F.3d 60, 70 (2nd Cir. 1999) (noting that "'well-established [rule] that non-monetary benefits, such as …deterring future misconduct by management may support a fee award'"); Kopet v. Esquire Realty Co., 523 F.2d 1005,1008 (2d. Cir.1975). In the instant case, Plaintiffs alleged that the class members failed to receive overtime wages and the Defendants vigorously denied these allegations.

Since Goldberger, id., fee awards of 25% or more have been common in this Circuit. One court commented that "[i]n this district alone, there are scores of common fund cases where fees alone (i.e., where expenses are awarded in addition to the fee percentage) were awarded in the range of 33-1/3% of the settlement fund. See Lloyd's Am. Trust, 2002 WL 31663577, at *26 (citing cases).

While this Court cannot conceivably police what happens behind the curtain of every class action settlement outside its courtroom doors, it should recognize the efforts of those who do. Class Counsel has repeatedly attempted to maximize the interests of the class.

Class Counsel in his role in pursuing this action and negotiating for compensation to Class Members, has provided tremendous benefits to the Class. For this effort, he should be

rewarded. See Goldberger, 209 F.3d at 51 ("'There is also commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest."); RJR Nabisco, 1992 WL 210138, at *7 ("The prospect of handsome compensation is held out as an inducement to encourage lawyers to bring such suits.'"), quoting Dolgow v. Andersen, 472, 494 (E.D.N.Y. 1968).

Respectfully, therefore, the class representative asks that his request for attorney's fees and expenses be granted.

## A.  Negotiated Attorney's Fee Agreements Are Favored In Class Action Settlements

Rule 23(h) of the Federal Rules of Civil Procedure states: "In an action certified as a class action, the court may award reasonable attorney fees and nontaxable costs authorized by law or by agreement of the parties." Fed. R. Civ. P. 23(h) (emphasis supplied).

Federal courts at all levels encourage litigants to resolve fee issues by agreement whenever possible. "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); see also, In re MDC Holdings Sec. Litig., [1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶95,474, at 97,487-88 (S.D. Cal. Aug. 30, 1990) ("Because this Court believes the parties should be encouraged to settle all their disputes as part of the settlement… , including the amount of the fee, it believes that if the agreed-to fee falls within a range of reasonableness, it should be approved as part of the negotiated settlement between plaintiffs and defendants."); M. Berenson Co. v. Faneuil Hall Marketplace, Inc., 671 F. Supp. 819, 829 (D. Mass. 1987) ("Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys fees, ideally the parties will settle the amount of the fee between themselves.") Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to

understandingly, sympathetically and professionally arrive at a settlement as to attorney's fees.")

In affirming the award of a negotiated fee, the Second Circuit has stated:

> [W]here…the amount of the fees is important to the party paying
> them, as well as to the attorney recipient, it seems to the author of
> this opinion that an agreement 'not to oppose' an application for
> fees up to a point is essential to completion of the settlement,
> because the defendants want to know their total maximum exposure
> and the plaintiffs do not want to be sandbagged. It is difficult to see
> how this could be left entirely to the court for determination after the settlement.

Malchman v. Davis, 761 F.2d 893, 905 n.5 (2d Cir. 1985), cert. denied, 475 U.S. 1143 (1986).

The virtue of a fee negotiated by the parties at arm's length is that it is, in effect, a market-set price. Defendants have an interest in minimizing the fee; plaintiffs have an interest in maximizing it; and the negotiations are informed by the parties' knowledge of the work done and result achieved and their views on what the court might award if the matter were litigated. In In re Continental Illinois Securities Litigation, 962 F.2d 566 (7th Cir. 1992), Judge Posner of the Seventh Circuit endorsed a market-based approach to evaluating fee requests. "[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price." Id. at 568. "It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." Id. "Markets know market values better than judges do." Id. at 570. "The object in awarding a reasonable attorney's fee…is to give the lawyer what he would have gotten in the way of a fee in an arms' length negotiation, had one been feasible." Id. at 572. Here, such a negotiation was feasible, and was conducted. The fee was negotiated at arm's length by sophisticated counsel familiar with the case, the risks for both sides, the nature of the result obtained for the class, and the magnitude of the fee the Court might award if the matter were litigated.

Thus, the negotiated fee is entitled to a presumption of reasonableness.

**B.   The Quality Of Representation**

Class Counsel were well-qualified from the outset to pursue this case. Their professional background, qualifications and experience are set forth in the declaration submitted herewith and with the Preliminary Application. As shown by the declarations, William C. Rand, Esq. and Jeffrey M. Gottlieb, Esq. have a great deal of experience in the prosecution and successful resolution of complex class actions, many involving the FLSA and NY Labor Law.

Courts routinely recognize the experience of class action counsel in determining the reasonableness of a fee award. See In re Lupron® Mktg. & Sales Practices Litig., No. 01-cv-10861-RGS, 2005 U.S. Dist. LEXIS 17456, at *14 (D. Mass. Aug. 17, 2005). In addition, the quality of representation is commonly measured by the result obtained. Maley v. Del Global Tech. Corp., 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002).

Class Counsel's decision to avoid additional litigation costs and settle at this juncture also supports a finding of effective representation. A business as usual approach to litigation, with motion practice and protracted discovery skirmishing would have resulted in cost and delay, but would not have resulted in greater benefits to the Settlement Class. As a result, the Settlement Class was well-served by Class Counsel's decision to engage in early settlement discussions. See McBean v. City of New York, 233 F.R.D. 377, 386, 2006 U.S. Dist. LEXIS 5003, at *17-18 (S.D.N.Y. 2006) (where all parties "agree upon the basic facts as they relate to the plaintiff class…class counsel's decision to forgo additional discovery in the hopes of minimizing costs and achieving a quick recovery for their clients…falls within the bounds of 'effective representation'").

Finally, the quality of opposing counsel is also an important factor for the Court to consider in evaluating the quality of services provided by Class Counsel. See, e.g., In re Warner Comms. Sec. Litig., 618 F. Supp. 735, 749 (S.D.N.Y. 1985). Defendants were represented by GOETZ FITZPATRICK LLP, a prestigious law firm, that represents management in labor and

employment matters whose lawyers negotiated each issue, phrase and nuance contained in the settlement. As the court stated in In re Copley Pharmaceutical, Inc., 1 F. Supp. 2d 1407, 1413-14 (D. Wy. 1998), "the skill required to perform the legal service presented by the instant case was great, particularly where class counsel were faced with opposing counsel of such high quality." Plaintiffs' counsel has proven equal to the task of working effectively and efficiently opposite Defendants' skilled counsel.

C. **The Agreed-Upon Fee Is Reasonable Under a Lodestar Cross-Check Analysis**

Under the lodestar method, "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." Goldberger, 209 F.3d at 47 "Once that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on 'other less objective factors, such as the risk of the litigation and the performance of the attorneys.'" Id. (quoting Savoie v. Merchants Bank, 166 F.3d 456, 460 (2d Cir. 1999)). The Class Action Fairness Act of 2005 approves of awarding fees under a lodestar/multiplier analysis. See 28 U.S.C. § 1712(b)(2) ("Nothing in this subsection shall be construed to prohibit application of a lodestar with a multiplier method of determining attorney's fees"). Under the lodestar method, the agreed-upon fee award of $110,000 ($117,212 – expenses of $7,212) represents a multiplier of less than one equal to .43 (calculated as the agreed legal fee of $110,000 divided by the lodestar $250,322.50). See Rand Decl. at ¶ 44.

Federal courts routinely award multipliers in class action proceedings. See, e.g., Maley, 186 F. Supp.2d at 369 (4.65 multiplier); In re NASDAQ Market-Makers Antitrust., Litig., 187 F.R.D. 465, 489 (S.D.N.Y, 1998) (3.97 multiplier: "In recent years multipliers of between 3 and 4.5 have become common."); Weiss v. Mercedes-Benz of N. Am., Inc., 899 F. Supp. 1297, 1304 (D.N.J. 1995) (9.3 multiplier), aff'd, 66 F.3d 314 (3d Cir. 1995); In re RJR Nabisco, M.D.L.

Docket No. 818 (MBM), 1992 U.S. Dist. LEXIS 12702, at *15-20 (S.D.N.Y. Aug. 24, 1992) (percentage-based fee representing 6 times lodestar).

Here, approval of the agreed-upon fee will not result in an excessive multiplier. See In re Lloyd's American Trust Fund Litig., 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663, at *80 (S.D.N.Y. Nov. 26, 2002) ("[T]he resulting multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit.") The multiplier takes into account the contingent nature of the fee, the risks of litigation, and the results achieved. See Id. at *81-82.

Here, class counsel's lode star was $250,322.50 and the amount recovered for the class was $387,212 (equal to potential payments to class members equal to $200,000, payments to the collective action class equal to $65,000 totaling $265,000.00, plus $110,000 of legal fees, plus $7,212.00 of legal costs, plus a $5,000 Name Plaintiff Incentive Award). (See Settlement Agr. ¶¶ 8A, 8B, 8C) The agreed upon fee payment of $110,000 ($117,212 – expenses of $7,212) equals only 28.4% the amount potentially recovered. More importantly, the fees of $110,000 equal less than half the Class Counsel's lodestar which is equal to $250,322.50. See Rand and Gottlieb Declarations.

In sum, the attorney's fees requested are reasonable under a lodestar cross-check analysis.

### D.  Class Counsel's Expenses Were Reasonably and Necessarily Incurred

In addition to the time he spent, Plaintiffs' counsel incurred  $8,072.14 in costs and expenses in the pursuit of this litigation.  Rand Decl. at ¶44.  "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged their clients." Hicks v. Morgan Stanley & Co., 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *29 (S.D.N.Y. Oct. 24, 2005).  The declaration of Plaintiffs' Counsel describe these expenses by category. These expenses were reasonably and necessarily incurred in the prosecution of this action.

Accordingly, Class Counsel respectfully requests that the Court award reimbursement of

these expenses in full.

**V.   The Incentive Awards for the Named Plaintiffs Are Reasonable**

Class Counsel requests approval of a modest incentive award to the named Plaintiff, Bledar Gani, in the amount of $5,000. Defendants do not oppose this award as provided by the Settlement Agreement.

"Incentive awards are not uncommon in class action cases and are within the discretion of the court." Frank v. Eastman Kodak Co., 228 F.R.D. 174,187 (W.D.N.Y. 2005). Based on Class Counsel's experience, the amounts requested here are consistent with or below the amounts typically awarded in similar litigation. See Fears v. Wilhelmina Model Agency, Inc., No.02 Civ. 4911, 2005 U.S. Dist. LEXIS 7961, at *9 (S.D.N.Y. May 5, 2005) (collecting cases illustrating a range of incentive awards and approving an award of $25,000). The incentive awards requested are justified in light of the plaintiffs' willingness to devote their time and energy to prosecuting a representative action and reasonable in consideration of the overall benefit conferred on the Settlement Class and should be approved. See, Dornberger v, Metropolitan Life Ins. Co. 203 F.R.D. 118,125 (S.D.N.Y. 2001). See, e.g., Spann v. AOL Time Warner, Inc., 02 Civ. 8238, 2005 U.S. Dist. LEXIS 10848, at *27 (S.D.N.Y. June 7, 2005)(granting an incentive award of $10,000 for each named plaintiff).   Here, Bledar Gani spent numerous hours working with plaintiff's counsel to prosecute and settle the litigation and even participated in a two day mediation.  Accordingly, the incentive bonus is reasonable.


**VI.   CONCLUSION**

For the foregoing reasons, Class Counsel respectfully asks that the Court grant this application in full and (1) grant final approval of the Settlement; (2) certify the Settlement Class; (3) award $117,212 to Class counsel as attorneys' fees and expense reimbursement; and (4)

approve an incentive award to the named Plaintiff in the amount of $5,000 and such other relief

as the Court Deems necessary.

Dated: New York, New York
July 20, 2012

LAW OFFICE OF WILLIAM COUDERT RAND

S/William C. Rand

_____
William Coudert Rand, Esq. (WR-7685)
Attorney for Plaintiff, Individually,
and on Behalf of All Other Persons Similarly Situated
488 Madison Ave., Suite 1100
New York, New York 10022
Tel: (212) 286-1425


Co-counsel
Gottlieb & Associates
Jeffrey M. Gottlieb, Esq. (JG-7905)
150 East 18th Street, Suite PHR
New York, New York 10003
Tel: (212) 228-9795